**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA for the use and benefit of MILESTONE TARANT, LLC,**<br><br>    and<br><br>**HIGHLAND ORNAMENTAL IRON WORKS, INC.,**<br><br>                Plaintiffs,<br><br>    v.<br><br>**FEDERAL INSURANCE COMPANY,**<br><br>        Defendant. | **Civil Action 08-02186  (RCL)** |
| **MILESTONE TARANT, LLC,**<br><br>    and<br><br>**HIGHLAND ORNAMENTAL IRON WORKS, INC.,**<br><br>                Plaintiffs,<br><br>    v.<br><br>**MANHATTAN CONSTRUCTION COMPANY**<br><br>        Defendant. | **Civil Action 09-01941  (RCL)** |

**MEMORANDUM  OPINION**

This matter is before the Court on several separate motions in two related actions which the Court will consider together for the sake of expediency.  In *Milestone Tarant, LLC v. Federal Insurance Company*, Civ. No. 08-2186 (or "Miller Act case"), Milestone Tarrant, LLC/Highland

Ornamental Iron Works, Inc., a Joint Venture ("Joint Venture") filed suit against surety bond

issuer Federal Insurance Company ("FIC") under the Miller Act, 40 U.S.C. § 3133 *et seq.*  In

that action, Joint Venture seeks $7,791,475 that is allegedly owed to it by the Manhattan

Construction Corporation ("Manhattan") for work Joint Venture engaged in to enhance the

Capitol Visitor Center in Washington, D.C.  Manhattan later filed for arbitration with the

American Arbitration Association ("AAA") and served its demand on Joint Venture.  In

*Milestone Tarant*, *LLC v. Manhattan Construction Co.*, Civ. No. 09-1941, Joint Venture filed a

motion for a preliminary injunction against Manhattan to halt the parties' arbitration [#2].  In

response, Manhattan filed a motion to compel arbitration [#7] and a motion to dismiss Joint

Venture's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) [#11].  Subsequent to

Manhattan's demand for arbitration, FIC moved for a stay in the Miller Act case pending the

resolution of arbitration between Manhattan and Joint Venture [#8].  Upon consideration of the

motions, the oppositions thereto, and the records of these cases, the Court concludes that

Manhattan's motions to dismiss and compel arbitration and FIC's motion to stay must be granted

and Joint Venture's motion for a preliminary injunction must be denied as moot.

## I. FACTUAL BACKGROUND

In 2003, Manhattan awarded a subcontract to Joint Venture for the fabrication and

installation of bronze railings, windows, and doors at a construction project known as the

"Capitol Visitor's Center."  2008 Compl. ¶ 5, 7, Ex. 2 at 1-3 (Subcontract).[1]  Earlier that year,

---

[1]        Joint Venture filed two different complaints.  For the sake of clarity, the Court
will refer to the complaint filed against FIC on December 16, 2008, as the 2008 complaint
("2008 Compl.") and the complaint filed against Manhattan on October 2009, as the 2009
complaint ("2009 Compl.").

FIC had issued a payment bond naming Manhattan as the principal and the United States as the obligee.  2008 Compl. ¶ 6, Ex. 1 at 1 (Bond).  Under the payment bond and pursuant to the Miller Act, FIC agreed to compensate any subcontractor for labor and materials furnished for the subcontract in the event Manhattan was unable to pay.  *Id.*

The payment due to Joint Venture under the original contract was $8.3 million, and the work was to be completed by December of 2005.  2008 Compl. ¶ 7-8, Ex. 2 at 1, 7 (Subcontract).  For reasons that are disputed and not relevant to resolving the motions currently before the Court, the project was not completed until late in 2008.  2008 Compl. ¶ 8.  In total, Joint Venture alleges that it spent over $16 million in completing the project as a result of the delay, *id.* ¶ 13, but has only been paid $11 million by Manhattan, *id.* ¶ 14.

In December 2008, Joint Venture initiated a lawsuit against FIC pursuant to its rights under the Miller Act.  In *Milestone Tarant, LLC v. Federal Insurance Company,* Joint Venture seeks to recover from FIC the reasonable value of its services performed but not yet paid by Manhattan, 2008 Compl. ¶ 19, and has asked for a jury trial.  Neither party has sought to join Manhattan, the general contractor, to the case.  Both parties have engaged in limited discovery since the inception of the suit roughly 11 months ago.

On September 30, 2009, Manhattan, pursuant to what it contends were its rights under the subcontract with Joint Venture, filed for arbitration with the AAA and served its demand on Joint Venture.  In its demand for arbitration, Manhattan asserts that Joint Venture's delays and defective performance constituted a breach of the subcontract, and that they are owed "no less than $3 million" by Joint Venture.  The "Settlement of Disputes" section of the subcontract between Manhattan and Joint Venture contains the following provision:

>All other disputes between the parties shall be resolved by litigation, in a court of
>competent jurisdiction, except that Manhattan may, at its sole option, require that
>any dispute be submitted to arbitration pursuant to the Construction Industry
>Rules of the American Arbitration Association except that all arbitrators shall be
>attorneys with at least ten (10) years experience in construction law. The election
>by Manhattan shall be made no later than thirty (30) days following receipt of
>service of process of any such litigation from Subcontractor or, if the claim is
>asserted by Manhattan, shall be made upon the filing of a demand for arbitration
>by Manhattan. Notwithstanding the above, Manhattan shall not be deemed to
>have waived any right it may have to arbitrate its dispute with Subcontractor by
>the filing of litigation against Subcontractor and its surety.

Def.'s Mot. to Stay at 4, Ex. A at 5, § 3.5 (Subcontract).

Subsequent to Manhattan's demand for arbitration, FIC moved for a stay in *Milestone Tarant, LLC v. Federal Insurance Company* pending the resolution of arbitration between Manhattan and Joint Venture.  Joint Venture then filed suit against Manhattan on October 14, 2009, seeking to stay the arbitration with Manhattan.  2009 Compl. at 9.  On the same day, Joint Venture filed a motion for a preliminary injunction against Manhattan to halt the parties' arbitration.  Manhattan thereafter filed a motion to compel arbitration on October 22, 2009 and a motion to dismiss the complaint on October 28, 2009.  Joint Venture seeks to resolve the contract dispute through its Miller Act suit against FIC.  Manhattan and FIC both seek to resolve the dispute through arbitration between Manhattan and Joint Venture.

## II.  LEGAL STANDARD

When considering "a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions" pursuant to Federal Rule of Civil Procedure 56(c).  *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003) (internal quotation marks omitted).  Therefore, it is appropriate to grant such motions when the pleadings and the evidence

demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party seeking to compel or stay arbitration bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, the non-movant's statements should be accepted as true and all inferences should be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## II. MANHATTAN's MOTION TO COMPEL ARBITRATION[2]

**A.      Legal Standard for Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The question of whether a particular dispute is arbitrable is "undeniably an issue for judicial determination." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (citations omitted). The basis for judicial authority to make this determination lies in

---

[2]      Because the analysis of Manhattan's motion to compel arbitration is crucial in resolving all the other motions, the Court will address this motion first.

the fact that arbitration agreements are separable from the agreements in which they are incorporated. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

A strong policy favoring alternative means of dispute resolution through arbitration supports a presumption of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Buckeye Check Cashing*, 546 U.S. at 440. However, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989) (citation omitted). Indeed, the overriding purpose of the FAA is not judicial economy or the expeditious resolution of claims, but the enforcement of agreements into which parties have entered. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985). As articulated by the Supreme Court, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648.

Relying on the language of the FAA, which states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, federal courts have applied "ordinary state-law principles that govern the formation of contracts" when determining arbitrability, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, while mindful of the federal policy favoring arbitration, it is the court's task to determine the parties' intent. *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 760–61 (D.C. Cir. 1988).

Such questions of arbitrability are usually brought before the court pursuant to section 4 of the FAA, which allows a party to petition any United States District Court which would

otherwise have subject-matter jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.  When deciding a motion to compel arbitration, a district court must "determine the enforceability of the agreement [to arbitrate] and decide whether arbitration should be compelled."  *Nelson v. Insignia/Esg. Inc.*, 215 F. Supp. 2d 143, 146 (D.D.C. 2001).  In determining whether arbitration should be compelled, the court analyzes the arbitration agreement under the FAA and applicable state law to determine whether (1) the parties entered into a valid and enforceable arbitration agreement and (2) whether the arbitration agreement encompasses the claims raised in the complaint.  *Hughes v. CACI, Inc.*, 384 F. Supp. 2d 89, 95 (D.D.C. 2005) (citing *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 149–50 (D.D.C. 2002)).

**B.**     **Legal Analysis**

There is no dispute that Manhattan and Joint Venture entered into a binding arbitration agreement.  *See* Manhattan's Mot. to Compel Arbitration ("Mot. to Compel") at 5; Pl.'s Mot. for Prelim. Inj. at 2-3.  Both parties signed the Subcontract, which contained an arbitration clause, and "a signature on a contract indicates mutuality of assent and a party is bound by the contract unless he or she can show specific circumstances relieving him or her of such an obligation." *Emeronye v. CACI Intern., Inc*, 141 F. Supp. 2d 82, 86 (D.D.C. 2001) (applying District of Columbia and Virginia law) (citations and internal quotation marks omitted).  Nor do the parties dispute that the underlying breach of contract claims are encompassed within the arbitration agreement.  The arbitration agreement is a broad one and covers "any dispute" between Joint Venture and Manhattan.  Mot. to Compel, Ex. 1 (Subcontract) at 4, § 3.5.2.

Instead, the parties dispute whether Manhattan complied with the requirements

enumerated in the arbitration agreement, and hence whether it was within Manhattan's right to invoke the arbitration agreement at all with respect to the parties' breach of contract claims. Whereas Joint Venture argues that Manhattan's arbitration demand was untimely, and that it therefore waived its right to arbitration, Manhattan contends that based on the language of the arbitration clause its demand for arbitration was timely under the Subcontract.  The arbitration provision in the Subcontract provides that "[a]ll other disputes between the parties shall be resolved by litigation . . . except that Manhattan may, at its sole option, require that any dispute be submitted to arbitration. . . . The election by Manhattan shall be made no later than thirty (30) days following receipt of service of process of any such litigation from subcontractor . . . ."  Mot. to Compel, Ex. 1 (Subcontract) at 4, § 3.5.2.   As is often the case in contract disputes, the parties disagree regarding the proper interpretation of this language.  According to Manhattan, the 30-day election period applies *only* when there is a dispute between Manhattan and the Joint Venture and when Manhattan has received service of process.  But, because Joint Venture has never filed a complaint against Manhattan seeking to resolve "disputes between the parties [Manhattan and the Joint Venture]" and because "Manhattan has never received 'service of process' of the Joint Venture's suit against Federal Insurance," Manhattan claims that Joint Venture's suit against FIC did not trigger Manhattan's 30-day election period.  Mot. to Compel (citing Exhibit A ¶ 3.5.2.) (alteration in original).  Therefore, Manhattan argues that the arbitration agreement covers Manhattan's claims against Joint Venture.

Joint Venture claims that arbitration is not proper because the arbitration initiated by Manhattan is plainly outside of the terms of the parties' limited arbitration agreement. According to Joint Venture, the Subcontract's "'Settlement of Disputes' clause explicitly states

that litigation is the agreed form of dispute resolution" except under the following limited circumstances: (1) Manhattan can elect arbitration after it initiates litigation against the Joint Venture or (2) Manhattan can elect arbitration within 30 days after service if Joint Venture initiates litigation.  Pl.'s Mot. for Prelim. Inj. at 9.   Because Manhattan waited ten months until "after Manhattan's attorneys (who also act as FIC's attorneys) were served with the Joint Venture's complaint in the Miller Act case," Joint Venture argues that it failed to make a timely election of arbitration," and therefore Manhattan and FIC waived their right to arbitration.  *Id.*

Joint Venture further argues that the distinction made by Manhattan, namely that Joint Venture sued FIC and not Manhattan, is irrelevant.  According to Joint Venture, the entire basis of FIC's defense in the Miller Act case is that it stands in the shoes of Manhattan, and will assert any defenses Manhattan has; their liability is intertwined, and FIC is liable only to the extent Manhattan is liable.  Therefore, under the same principle, FIC should have made the election of arbitration within the 30-day time limit that was specified in the contract.  Because both FIC and Manhattan failed to do so, the Joint Venture contends that Manhattan cannot now elect to arbitrate its claims.

Joint Venture's arguments are unpersuasive.  Joint venture provides no textual or legal support for its proposition that Manhattan's 30-day time limit was triggered by the service of process on FIC, and its effort to arbitrate is therefore untimely. To the contrary, the plain language of the arbitration clause provides that Manhattan's 30-day time limit to elect arbitration is triggered by (1) a "dispute between the parties" and (2) "receipt of service of process of any such litigation from Subcontractor."  First, FIC is not a party to the Subcontract; therefore, any disputes against FIC should not trigger the 30-day time limit.  The language of the contract

makes this clear.  Section 3.5.1 begins by describing what will happen "[i]n case of any disputes between Manhattan and Subcontractor."  Mot. to Compel, Ex. 1 (Subcontract) at 4.  Section 3.5.2 continues, "[a]ll other disputes between the parties shall be resolved by litigation . . . except that Manhattan may, at its sole option, require that any dispute be submitted to arbitration . . . . The election by Manhattan shall be made no later than thirty (30) days following receipt of service of process of any such litigation from Subcontractor."  The phrase "[a]ll other disputes between the parties" in section 3.5.2 refers back to the discussion of disputes between Manhattan and Subcontractor, in section 3.5.1.  Because Manhattan and the Joint Venture are the only parties contemplated in sections 3.5.1 and 3.5.2, the disputes between Manhattan and the Joint venture are the only disputes that can trigger Manhattan's 30-day time limit to elect arbitration.  Furthermore, because Manhattan never received service of process, neither of the two triggering factors can be said to have occurred.[3]

   Furthermore, the Court is not convinced by the Joint Venture's contention that FIC should have made an election of arbitration when it was served with process.  The Joint Venture seems to argue that if a surety can assert the defenses of the general contractor when it is sued by the subcontractor, it should also be bound by the specific terms of the Subcontract between the

---

[3]   In its opposition to Manhattan's motion to dismiss the complaint, Joint Venture presents an additional argument that it did not raise in its opposition to compel arbitration or in its motion for preliminary injunction.  It argues that because the arbitration clause states that "[t]he election by Manhattan shall be made no later than thirty (30) days following receipt of service of process of *any such litigation* from Subcontractor," Manhattan has 30 days to elect arbitration if Joint Venture initiates "*any litigation*" – not just litigation against Manhattan.  Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2.  This reading, however, is misplaced.  The terms "any such litigation" seems to refer to the opening sentence of 3.5.2, which states "All other disputes *between the parties* shall be resolved by litigation . . . ."  Mot. to Compel, Ex. 1 (Subcontract) at 4 (emphasis added).  As mentioned above, however, FIC is not a party to the subcontract.  Therefore, Joint Venture's litigation against FIC does not trigger Manhattan's 30 day time-limit.

general contractor and the subcontractor.  Joint Venture, however, has provided no case support

for this argument and the specific terms of the Subcontract seems to refute such an assertion.

Section 1.1.2.2 states that "[t]he Subcontract may not be construed to create any contractual

relationship of any kind between . . . any persons or entities other than Manhattan and

Subcontractor."  Mot. to Compel, Ex. 1 (Subcontract) at 1.  Further refuting Joint Venture's

argument is the fact that many courts have found that an agreement to arbitrate in the

Subcontract does not by itself bind the surety to arbitration.  *See e.g.*, *Employers Ins. of Wasusau*

*v. Bright Metal Specialties, Inc.*, 251 F.3d 1316 (11th Cir. 2001) (holding that surety for general

contractor could not be compelled to arbitrate subcontractor's claims against it, where the surety

had not contractually agreed to arbitrate any claims arising out of its surety relationship with the

general contractor); *U.S. for Use and Benefit of Capital Elec. Const. Co., Inc., v. Pool and*

*Canfield Inc.*, 778 F. Supp. 1088, 1090 (W.D.Mo. 1991) (stating that by issuing a bond, surety

did not agree to arbitrate claims despite arbitration agreement between contractor and

subcontractor).

    Based on the foregoing interpretation of the arbitration clause, the Court finds that

Manhattan's arbitration claim is timely and, therefore, is covered by the Subcontract's arbitration

provision.  The Court's interpretation is reinforced by well-settled case law directing it to

construe the Subcontract "with a healthy regard for the federal policy favoring arbitration."

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.  "An order to arbitrate [a] particular grievance

should not be denied unless it may be said with positive assurance that the arbitration clause is

not susceptible of an interpretation that covers the asserted dispute."  *AT & T Technologies, Inc.*

*v. Communications Workers of America*, 475 U.S. 643, 650 (1968) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

Accordingly, the Court concludes Manhattan's motion to dismiss and motion to compel arbitration should be granted and Joint Venture's motion for preliminary injunction should be denied as moot.

### III.  FIC's MOTION TO STAY

Occurring simultaneously to the suit between Joint Venture and Manhattan is Joint Venture's suit against FIC, initiated in December of 2008.  In that case, Joint Venture seeks to recover money unpaid by Manhattan under the Miller Act.  The Miller Act "requires contractors doing work with the federal government to furnish payment bonds with a surety in order to protect those who provide work or material on the government project." *United States ex rel. Walker Seal Cos., Inc. V. Liberty Mutual Ins. Co.*, 356 F. Supp. 2d 1 (D.D.C. 2005) (citing 40 U.S.C. § 3131).  Further, the Miller Act provides a civil cause of action against the surety for subcontractors doing work on a government project who have not received payment within 90 days within completion of work.  *See Walker Seal Cos.*, 356 F. Supp. 2d at 1-2 (citing 40 U.S.C. § 3133).  FIC has moved to stay the case, arguing that the court is obligated to grant such a stay under the FAA.  Def.'s Mot. to Stay at 4-5.  By contrast, Joint Venture argues that a stay in a case such as the instant one lies within the discretion of the court, and that the court should utilize its discretion and refuse to grant a stay pending arbitration with Manhattan.  Pl.'s Opp. at 6.

**A.**     **Whether to stay the instant case is a matter of judicial discretion**

Under certain circumstances, the FAA requires a district court to stay a federal suit

pending arbitration. *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 940 (D.Md. 2004). In pertinent part, the FAA reads:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3. Where the issues are not "referable to arbitration," however, the courts have discretionary power to stay civil proceedings pending the resolution of arbitration. *See DSMC, Inc. v. Conerva Corp.*, 273 F. Supp. 2d 14, 30 (D.D.C. 2002) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21 n. 23 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.").

Whereas FIC urges the Court that a stay is mandatory in this case under the FAA, Def.'s Mot. to Stay at 4-5, Joint Venture argues that the stay is discretionary because the underlying issue is not "referable to arbitration." Pl.'s Opp'n at 6. The Court agrees with Joint Venture. As noted above, FIC was not a party to the agreement to arbitrate between Joint Venture and Manhattan. Therefore, Joint Venture's Miller Act suit against FIC is not an "issue referable to arbitration under an agreement in writing for such arbitration," and whether or not to stay such a suit pending resolution of arbitration is within the court's discretion. *See DSMC*, 273 F. Supp. 2d at 30 n. 5 (holding that it is within court's discretion to grant stay because "[t]he mandatory stay provision of the Act applies only to parties to the arbitration agreement" (citing *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529-30 (7th Cir. 1996))).

In moving for a stay, FIC argues that because the factual and legal questions to be settled in the arbitration between Joint Venture and Manhattan are the same questions that would be litigated in Joint Venture's present suit against FIC, allowing both to proceed simultaneously would be an inefficient use of resources.  Furthermore, they suggest, Joint Venture's suit against FIC on the surety bond was simply a way for it to avoid arbitrating the question of contractual liability vis-à-vis Manhattan.  Joint Venture counters that in fact its Miller Act suit is a separate and distinct cause of action from its contractual claims against Manhattan, and therefore should not be barred from pursuing a remedy against FIC.  Moreover, they suggest, staying the instant case would only delay further the resolution of the dispute.

In light of the concerns over judicial economy and the possibility of inconsistent results, coupled with the strong federal presumption in favor of enforcing arbitration agreements and the underlying purpose of the Miller Act, the Court finds in favor of FIC and stays Joint Venture's Miller Act claim against FIC pending the resolution of arbitration between Joint Venture and Manhattan.

### 1. Staying plaintiff's suit against the surety comports with judicial economy and consistency

As a matter of this Court's discretion to "control its docket," there are important considerations of judicial economy and consistency involved in the claims and defenses at issue here.  As FIC points out, its liability to Joint Venture is dependent upon whether Manhattan is liable under its contract with Joint Venture.  *See* Def.'s Mot. to Stay at 4-5.  Thus, FIC and Joint Venture would be litigating substantially the same issues being arbitrated between Manhattan and Joint Venture, namely the liability between Manhattan and Joint Venture under the

Subcontract.[4]  As one court stated, "It seems grossly inefficient to have the parties arbitrate and litigate at the same time or bear unnecessary expense and the risk of inconsistent results." *United States  ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co*., 349 F. Supp. 2d 934, 941 (D. Md. 2004) (quoting *United States  ex rel. Tanner v. Daco Constr., Inc.,* 38 F. Supp. 2d 1299, 1304-05 (N.D. Okla. 1999).  This Court agrees.  It would be an inefficient use of both the Court's and the parties' resources to simultaneously debate the same issues in two distinct forums.[5]

It is also true that issuing a stay in this case will not result in "indefinite delay," as Joint Venture suggests.  Pl's Opp'n at 10.  If Joint Venture prevails at arbitration, its award will be enforceable against Manhattan.  Insofar as Joint Venture is unable to enforce against Manhattan, Joint Venture need not reinstate its litigation against FIC because FIC has already agreed to be bound by the arbitration.

In the opposite scenario, were Manhattan to prevail at arbitration, Joint Venture would likely be bound by the result, foreclosing further litigation with FIC.  At the very least, Joint Venture would likely be bound by the doctrine of collateral estoppel, also known as issue

---

[4]    Presumably FIC would not seek to establish Joint Venture's liability under the Subcontract, as Manhattan seeks to do in arbitration.  Nevertheless, Manhattan's liability would be at issue in both the litigation and arbitration proceedings.  Manhattan could have moved to intervene pursuant Fed. R. Civ. Pro. 24(b), *see United States ex. rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 938-39 (D. Md. 2004) (granting prime contractors 24(b) motion to intervene in Miller Act suit by subcontractor against surety), but instead chose to pursue its claims under the agreed upon arbitration provision in the Subcontract.  This Court will not require Manhattan to intervene in the present suit to assert its claims against Joint Venture where the two parties have agreed such claims are arbitrable.  To do so would cut against what the parties assented to, as well as the enunciated policy in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[5]    It should also be noted, once again, that Manhattan is not a party to this suit because Joint Venture chose not to assert Manhattan as a defendant.  As a result, unless Manhattan were to intervene in this suit, litigation of Joint Venture's claims under the subcontract would occur *through* FIC.  Arbitration between Joint Venture and Manhattan, therefore, would be far more efficient.

preclusion.  In federal court, a claimant may be barred from relitigating an issue decided in a

previous proceeding even where one of the parties in the new litigation was not a party in the

previous proceeding.  *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313

(1971) (abolishing the requirement of mutuality when decideding whether a party is collaterally

estopped from relitigating an issue already decided).  Where a plaintiff attempts to litigate an

issue already decided against a new party, the plaintiff is foreclosed from relitigating the issue if:

1) the issue was actually litigated with a full and fair opportunity to litigate, 2) the issue was

actually decided on the merits, 3) the disposition was sufficiently final, and 4) the resolution of

the issue was necessary to the disposition of the first action.  *Am. Train Dispatchers Ass'n v.*

*Burlington Northern R. Co.*, 784 F. Supp. 899, 903 (D.D.C. 1992) (citing *Nat'l Post Office Mail*

*Handlers v. Am. Postal Workers Union*, 907 F.2d 190, 192 (D.C. Cir. 1990)).  The Court cannot

decide the issue here, but suffice it to say that FIC could likely preclude Joint Venture from

relitigating the issue of contractual liability after arbitration.  First, "[t]he decisions of binding

arbitration proceedings are final decisions on the merits for the purposes of res judicata." *Cent.*

*Itn'l Arms, Ltd. v. Fed. State Unitary*, 172 F. Supp. 2d 79, 95 (D.D.C. 2001) (citing *Schattner v.*

*Girard, Inc.*, 668 F.2d 1366, 1368 (D.C. Cir. 1981)).  Second, Joint Venture will have had a full

and fair opportunity to litigate the underlying issue between it and FIC in arbitration with

Manhattan, *i.e.* whether Manhattan is liable for Joint Venture's contractual claims.  Finally, the

resolution of the issue of liability will have been necessary to the disposition of the arbitration.

Thus, at the very least Joint Venture would likely be barred from relitigating in this suit the

underlying issue that will be decided in its arbitration with Manhattan.  Even if Joint Venture

were to not prevail at arbitration, therefore, it is unlikely that any significant delay will result from a stay in this suit.

### 2. Staying plaintiff's suit against the surety accords with the federal policy favoring the enforcement of valid arbitration agreements and does not contravene the purpose of the Miller Act

Allowing litigation to proceed in this suit alongside arbitration would disserve the "liberal federal policy favoring arbitration agreements." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). This is true for two interrelated reasons. First, as previously noted, allowing this case to proceed would force prime contractors with claims against subcontractors—who have agreed to arbitrate disputes with subcontractors—to join litigation initiated by subcontractors against the surety. In effect, it would draw Manhattan into litigation with Joint Venture despite the fact that the two parties agreed to settle disputes through arbitration in certain circumstances. Second, as the court noted in *Tanner*, not staying litigation under these circumstances would allow any public works subcontractor to "circumvent" its agreements to arbitrate with the prime contractor simply by suing the surety in federal court. *See Tanner*, 38 F. Supp. 2d at 1306. Thus, not staying the proceeding would render the arbitration provision in the subcontract, and Manhattan's resulting right to arbitrate with Joint Venture, "meaningless." *Id.* Such a negation of the agreement to arbitrate in the subcontract cannot be allowed in light of the overriding purpose of the FAA to "enforce [arbitration] agreements into which parties have entered." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 (1985).

Joint Venture also argues that "a payment bond claim under the Miller Act is a distinct remedy and a distinct cause of action, and it is not simply an alternative form of a breach of contract claim or a way of 'circumventing' an arbitration clause." Pl.'s Opp'n at 9. Therefore,

Joint Venture asserts, it is not circumventing contract law or the arbitration clause but merely utilizing the remedy Congress intended to provide through the Miller Act. *Id.* There are two problems with Joint Venture's argument.

First, although the Court is staying its Miller Act claim against FIC, Joint Venture will not lose the benefit that the Miller Act was intended to provide. The Miller Act undoubtedly provides subcontractors with a distinct cause of action by allowing subcontractors to sue sureties on payment bonds, and is not simply an alternative to contract law claims. Joint Venture is correct in so asserting, but recognizing that fact does not end the inquiry. The purpose behind the Miller Act suggests a distinct reason for providing a separate cause of action. Because an aggrieved subcontractor cannot secure a mechanic's lien on public property, and therefore may be unable to recover from the general contractor on a contract claim, the purpose of the Miller Act was to "afford the subcontractor [working on public construction projects] the financial protection of an action against the surety." *See United States ex. rel. Mariana v. Piracci Constr. Co., Inc.*, 405 F. Supp. 904, 906 (D.D.C. 1975); *see also F.D. Rich Co. v. United States ex. rel. Indus. Lumber Co., Inc.*, 417 U.S. 116, 122 (1974) ("The Miller Act was intended to provide an alternative *remedy* to protect the rights of these suppliers." (emphasis added)). The Miller Act is thus designed to ensure that subcontractors can secure a *remedy* against general contractors on public projects.

Here, however, FIC has agreed to be bound by the result of arbitration. Were Joint Venture to succeed at arbitration but be unable to secure its remedy against Manhattan, it could still immediately collect on the bond against FIC. Stated differently, because FIC has agreed to be bound by any arbitration award, Joint Venture has the protection Congress intended to

provide through the Miller Act.  Although the Miller Act undoubtedly provides subcontractors

with a federal cause of action and remedy apart from a state law mechanic's lien, that remedy is

not foreclosed by the arbitration the parties have agreed to in this case.  In light of the purpose

behind the cause of action in the Miller Act, Joint Venture will not be harmed by staying that

cause of action pending arbitration.

Second, it is true that the Miller Act is not generally "a way of 'circumventing' an

arbitration clause."  Recognizing that circumvention is not the Miller Act's purpose does not

negate the fact that that is undoubtedly what Joint Venture seeks to do in this case.  Having

agreed to arbitrate contractual issues with Manhattan, Joint Venture cannot now avoid its

obligation by only suing the surety on the payment bond.  *Cf. United States ex. rel. Capolino*

*Sons, Inc. v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705, 706-07 (2d Cir. 1966) ("Though

[the subcontractor] would otherwise be free . . . to sue the prime contractor and the surety on the

contractor's payment bond, there is no inconsistency in requiring that an arbitration precede

resort to the courts if the [subcontractor] and the contractor had previously agreed to arbitrate

disputes.").

Indeed, staying this case pending arbitration is in accord with the opinions of several

other courts faced with the task of resolving tensions between the Federal Arbitration Act and

the Miller Act.  *Tanner*, 38 F. Supp. 2d at 1304 (stating that there is "a long history of Miller Act

cases which resolve the tension between the Miller Act and the Federal Arbitration Act by

staying the Miller Act claim pending arbitration of the underlying dispute"); *see United States*

*ex. rel. Newton v. Neumman Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1426-27 (9th Cir. 1985)

(holding the district court did not abuse its discretion where it granted subcontractor's motion to

compel arbitration with contractor and surety and motion to stay pending arbitration); *United States ex. rel. Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1013 (5th Cir. 1976) (staying Miller Act proceeding pending resolution of arbitration between prime contractor and subcontractor); *United States ex. rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705, 709 (2d Cir. 1966) (holding Miller Act claims arbitrable and affirming the district court's decision to stay Miller Act proceeding pending arbitration); *Agostoni Bros. Building v. United States ex. rel. Virginia-Carolina Elec. Works, Inc.*, 142 F.2d 854, 855 (4th Cir. 1944) (reversing district court's denial of stay pending arbitration in Miller Act suit).  *But see United States ex. rel. Pensacola Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 705 F. Supp. 306, 309 (W.D. La. 1988) (denying general contractor's motion to stay because the motion would not damage the general contractor but would harm the subcontractor by stripping it of its Miller Act remedy).[6]

DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14 (D.D.C. 2002), a case heavily relied upon by plaintiffs, is factually distinct from the case at bar.[7]  The court's reasoning in *DSMC*

---

[6]      The court's holding in *Pensacola* is unpersuasive both generally and in the context of the instant case.  In general, if a court grants a stay pending arbitration and the subcontractor prevails at arbitration, the subcontractor still retains the protection of the Miller Act.  Where a subcontractor prevails at arbitration but the general contractor is unable to pay, the subcontractor can simply restart its Miller Act suit against the surety in federal court.  Furthermore, in this case FIC has agreed to be bound by the outcome of the arbitration.  Joint Venture, therefore, has not lost the protection the Miller Act was meant to provide and will not be harmed in the way the *Pensacola* court feared.

[7]      In *DSMC*, DSCMi contracted with National Geographic Television Library (NGTL) to provide digitizing and cataloguing services to organize NGTL's film footage archive.  *DSMC, Inc.*, F. Supp. 2d at 17.  DSMCi initiated arbitration against NGTL, pursuant to their contract, alleging breach of the confidentiality agreement, and simultaneously sued a third party, Conerva, in federal court for state tort law and federal copyright violations.  *Id.* at 17-18.  NGTL moved to intervene in the federal court proceeding and stay the action pending its arbitration with DSMCi.  *Id.*

does not apply in this case.  Here, the concern is not that the issues could simply be narrowed by arbitration.  Rather, arbitration would decide the relevant issues completely.  FIC's liability is completely dependent upon whether Manhattan breached its contract with the plaintiffs, the issue currently pending in arbitration.  FIC has also consented to be bound by the arbitration result.  Furthermore, whereas DSCMi would still have to litigate whether Convera violated federal copyright laws if it prevailed at arbitration against NGTL, no litigation would be necessary in this case after a final decision in arbitration.  Thus, this is not a case where litigation would simply be *delayed*, as in *DSMC*.  Instead, the court is simply deferring to the arbitration which both parties consented to in the subcontract.

To the extent that plaintiffs rely on the court's decision in *United States ex. rel. Walker Seal Cos., Inc. v. Liberty Mut. Ins. Co.*, 356 F. Supp. 2d 1 (D.D.C. 2005), that case is inapposite in two ways.[8]  First, the subcontractor in that case expressly reserved the right not to arbitrate any Miller Act claims.[9]  *Id.* at 2.  The court's decision, therefore, did not offend the federal presumption in favor of arbitration because the parties specifically agreed not to arbitrate such claims.  Second, the general contractor in *Walker Seal* had not initiated arbitration to assert its *own* claims against the subcontractor, as Manhattan did in this case.  *Id.* at 1-2.  As a result,

---

[8]        Similar to the circumstances here, the contractor and subcontractor in Walker Seal agreed to arbitrate contractual claims prior to initiating suit in court.  *Id.* at 2.  Once a dispute arose, the subcontractor initiated suit in federal court against the surety pursuant to the Miller Act.  *Id.*  The surety then moved to dismiss, and in the alternative, stay the case pending arbitration of the matter.  *Id.*  The court denied the motions.  *Id.* at 3.

[9]        An addendum to the contract stated that "[n]othing herein shall limited the Subcontractor's rights under [the general contractor's] payment bond or the Miller Act."  *Id.* at 2.  The president of the subcontractor also submitted an affidavit stating that the intention behind the addendum was to nullify the general arbitration requirement with respect to the bond claim.  *Id.*

there would have been no concurrent litigation and arbitration, and thus no potential for duplicate proceedings and no concern about judicial economy.

Weighing the federal policy favoring the enforcement of arbitration agreements, taking into consideration the purpose behind the Miller Act and the risk of inconsistency and inefficient use of resources, the Court exercises its discretion to stay the Joint Venture's Miller Act claim pending the resolution of arbitration between Joint Venture and Manhattan.

## V.  CONCLUSION

For the foregoing reasons, in the case of  *Milestone Tarant*, *LLC v. Manhattan Construction Co.,* Civ. No. 09-1941, Manhattan's motions to compel arbitration [#7 ] and to dismiss [#11] are **GRANTED** and Joint Venture's motion for a preliminary injunction [#2] is **DENIED** as moot.  In *Milestone Tarant, LLC v. Federal Insurance Company*, Civ. No. 08-2186, FIC's motion to stay pending arbitration [#8] is **GRANTED**.  Appropriate orders accompany this memorandum opinion.

ROYCE C. LAMBERTH
Chief Judge
United States District Court